```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
SHAUN STEWART,

                Petitioner,
                                                    MEMORANDUM AND ORDER
     -against-                                      Case No. 1:15-cv-07310-FB

SUPERINTENDENT THOMAS GRIFFIN,

                Respondent.
---------------------------------------------------------x
```

*Appearances*:
*For Plaintiff*:                                    *For Defendants*:
DANIELLE M MUSCATELLO                               MARIE E. JOHN-DRIGO
Law Office of Robert DiDio                          Office of the District Attorney,
80-02 Kew Gardens Road, Suite 1030                  Kings County
Kew Gardens, NY 11415                               Renaissance Plaza at 350 Jay Street
                                                    Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

Petitioner Shaun Stewart ("Stewart") is currently serving a prison term of twenty-five years to life for second-degree murder. He petitions for habeas corpus relief under 28 U.S.C. § 2254, claiming the trial court violated his constitutional rights by declining to give a missing witness instruction as to two potential witnesses for the State. For the reasons discussed below, the petition is denied.

I

In the early morning hours of October 13, 2007, Terrence Ruffin was beaten with aluminum baseball bats while standing inside a Kennedy Fried Chicken restaurant in Brooklyn. He died three days later. Stewart was charged with second-degree murder, among lesser offenses, for the attack.

At trial, the principal witnesses for the State were Ruffin's girlfriend Catrina Armstead and Police Officer Kenneth Clarke. Armstead testified that she and Ruffin had spent most of the night at a nearby nightclub, where she noticed a man—whom she later learned to be Stewart—staring at her and Ruffin. When the nightclub closed, Armstead and Ruffin went to Kennedy Fried Chicken. Stewart came in carrying a baseball bat and began to argue with Ruffin. Taron Dunn, who was seated in the restaurant, stood up and lifted his shirt to reveal a gun. He then joined Ruffin in arguing with Stewart. Meanwhile, Armstead spotted another man with a bat. She asked him what was happening, and he explained, in sum, that Ruffin would be punished for a recent fight with a member of Stewart's family.

Armstead saw a police car parked on the opposite side of the street and walked outside to ask the officers sitting in the car for help. Looking back inside, she saw Stewart and one or two others hitting Ruffin in the head with bats while he tried to stop the blows with his arms. She could not see what Dunn was doing, but he did not have a bat.[1] Armstead alerted the police and returned to the restaurant in time to see Stewart and Dunn leave.

---

[1] On cross-examination, defense counsel asked Armstead whether she had stated, prior to trial, that Dunn had also wielded a bat during the attack. Armstead denied making the statement. However, Officer Clarke's memo book included a statement by Armstead, made on the night of the attack, that Dunn had wielded a bat.

2

Officer Clarke and Officer Cindy Hammond were sitting in the police car when Armstead approached. Officer Clarke testified that he followed Armstead back to the restaurant and saw two men leaving. One, whom Officer Clarke later identified as Stewart, was holding a bat. As he fled, Stewart dropped the bat. Officer Clarke followed the men on foot and detained them. He conducted a show-up identification at the scene, and Armstead identified Stewart as one of the attackers. Officer Clarke retrieved the bat Stewart dropped along with a second bat from inside the restaurant and placed them unwrapped in the trunk of his squad car. Armstead and Officer Hammond accompanied Ruffin in an ambulance to the hospital, where he became comatose and eventually died.

Detective Lamendola also testified regarding his investigation. As relevant here, he mentioned an interview with one Kareem Obaidi, the manager on duty at Kennedy Fried Chicken when Ruffin was attacked. Detective Lamendola did not describe what Obaidi said during the interview.

Michael McCasland, an expert in DNA analysis, tested the bats for DNA evidence and found none. At trial, he testified that, although such evidence will theoretically be transferred any time an object touches a person's body, circumstances may prevent a forensic examiner from recovering it. For example, intervening material like hair or clothing may reduce the transfer of DNA, or, in the case of a blunt object, it may rebound so quickly that the brief contact transfers very little or no DNA.

3

At the close of the prosecution's case, defense counsel requested a missing witness charge regarding, among others, Officer Hammond and Obaidi. The court denied the request. As to Obaidi, it reasoned that he was out of state and unavailable to testify. Moreover, although Obaidi had witnessed the attack, he claimed to be unable to identify the attackers. As to Officer Hammond, the court reasoned that her testimony would be cumulative because it would not add anything to Officer Clarke's, whom she had accompanied at virtually every turn on the night of the attack. The court rejected as speculative defense counsel's argument that Armstead may have made inconsistent statements to Officer Hammond during the ambulance ride—the only time Officer Hammond and Officer Clarke were separated.

Stewart was convicted of murder in the second degree and sentenced to imprisonment for a term of twenty-five years to life. On appeal, he claimed that the trial court erred by rejecting his request for a missing witness instruction as to Officer Hammond and Obaidi and that the error violated his rights under the Fourteenth Amendment's Due Process Clause. The Appellate Division affirmed the judgment of conviction, holding that the trial court had "providently exercised its discretion" in denying a missing witness charge because Officer Hammond's testimony was cumulative and Obaidi was unavailable to testify. *People v. Stewart*, 96 A.D.3d 880, 881 (2d Dep't 2012). The Appellate Division declined to consider Stewart's argument that the State should have subpoenaed Obaidi to testify under N.Y. Criminal

Procedure Law ("CPL") § 640.10 because he failed to raise it at trial, leaving it unpreserved for appellate review. *Id.* The Court of Appeals denied leave to appeal. *People v. Stewart*, 19 N.Y.3d 1001 (N.Y. 2012).

After pursuing additional collateral challenges in state court on grounds that are not relevant here, Stewart brought this § 2254 petition raising the same claim he raised on direct appeal.

## II

Stewart's due process claim was adjudicated on the merits in state court. Accordingly, this Court may grant his petition only if the state court's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's adjudication of a claim is contrary to such law "when the state court either has arrived at a conclusion that is the opposite of the conclusion reached by the Supreme Court on a question of law or has decided a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (internal quotation marks omitted). An unreasonable application of clearly established law occurs when the state court correctly defines the law but its adjudication of the claim "was so lacking in justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement." *Id.* (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Habeas relief for an erroneous jury instruction on matters of state law requires the petitioner to establish that (1) the trial court erred under state law by not giving the instruction, and (2) the error "by itself so infected the entire trial that the resulting conviction violates due process." *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)). Where the claimed error is not a misstatement of the law but a failure to give a required instruction, the petitioner's burden is "especially heavy" because "[a]n omission . . . is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

Here, the Appellate Division's adjudication of Stewart's claim was not contrary to or an unreasonable application of clearly established law. First, the Appellate Division properly held that Stewart was not entitled to the instruction under state law. Under New York law, a missing witness charge requires a prima facie showing that "the uncalled witness is knowledgeable about a material issue upon which the evidence is already in the case; that the witness would naturally be expected to provide noncumulative testimony favorable to the party who has not called him; and that the witness is available to such party." *Correa v. Duncan*, 172 F. Supp. 2d 378, 382 (E.D.N.Y. 2001) (quoting *People v. Gonzalez*, 68 N.Y.2d 424, 509 (N.Y. 1986)). The

decision on whether to give the charge "lies in the sound discretion of the trial court." *Reid v. Senkowski*, 961 F.2d 374, 377 (2d Cir.1992).

The Appellate Division reasonably concluded that Officer Hammond's testimony would have been cumulative because she witnessed the same events as Officer Clarke. Arguing otherwise, Stewart emphasizes that no DNA evidence was recovered from the bat and that Armstead purportedly gave prior inconsistent statements about whether Dunn had also carried a bat on the night of the attack. However, the trial court held that Officer Hammond's testimony would be cumulative of Officer Clarke's, and these facts do not undermine that conclusion. Stewart implicitly concedes as much by arguing that Officer Hammond could "corroborate" Officer Clarke's testimony regarding Stewart's actions on leaving the restaurant. And although Officer Clarke did not accompany Officer Hammond in the ambulance, anything Armstead or Ruffin said during the ride would have been inadmissible hearsay.[2]

As to Obaidi, the Appellate Division reasonably held Stewart failed to show that he was available and under the State's control. Stewart did not dispute that Obaidi was out of state, and merely witnessing the crime does not place him in the State's

---

[2] Stewart's contention that Armstead's statements would have been admissible as prior inconsistent statements is incorrect. To be excluded as non-hearsay, a prior inconsistent statement must be "given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition." Fed. R. Evid. 801(d)(1)(A). Armstead's statements in the ambulance, of course, did not meet those criteria.

control. *See People v. Smith*, 279 A.D.2d 259 (2d Dep't 2001) (out of state crime victim not deemed to be in State's control). Moreover, as the Appellate Division properly concluded, Stewart's argument that the State should have subpoenaed Obaidi under N.Y. CPL § 640.10(3) was unpreserved for appellate review because Stewart failed to raise it in the trial court.

Even if the trial court had erred under state law by not giving the missing witness instruction, Stewart fails to show that the purported error "by itself so infected the entire trial that the resulting conviction violates due process." *Davis*, 270 F.3d at 123. In *Davis*, the Second Circuit found that standard satisfied in the case of a homicide defendant who was erroneously deprived of a jury instruction regarding the justification of self defense. *See id.* at 131. Given that the evidence on justification was favorable to the defendant, there was "a substantial likelihood that a properly instructed jury would have found in Davis's favor on the homicide charge." *Id.*

By contrast, Stewart's requested missing witness charge would have, at most, slightly undermined the credibility of Armstead and Officer Clarke. Stewart urges that their credibility was vulnerable to attack because Armstead made prior inconsistent statements and the bat recovered by Officer Clarke yielded no DNA evidence. However, Armstead's inconsistent statements involved whether Dunn had a bat and participated in the attack. Defense counsel probed these inconsistencies and others on cross-examination and emphasized them during his closing statement. Stewart, on

8

the other hand, was consistently identified by Armstead as both an attacker and a bat-wielder. Anything she did or did not say about Dunn would not have disturbed her testimony in that regard. As to the lack of DNA evidence on the bat, the jury could have accepted the expert's testimony that the attack would not necessarily have transferred DNA to the bat. It is therefore unlikely that the requested instruction would have affected the jury's verdict.

## Conclusion

For the foregoing reasons, the § 2254 petition is denied. The Court declines to issue a certificate of appealability because Stewart has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

**SO ORDERED**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
July 23, 2018